IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HERMAN SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-1708 |
| | § | |
| LYONDELL CITGO REFINING CO., | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Herman Smith filed this suit seeking judicial review and reversal of an arbitration award that rejected his claim of improper job termination. Smith had filed a grievance after he was fired from his job as a pumper at Lyondell-Citgo Refining Company. The grievance was submitted to arbitration under a collective bargaining agreement. After a hearing in which Smith was represented by an attorney provided through his union, PACE International Union Local 4-227, the arbitrator concluded that Lyondell-Citgo had fired Smith for "just cause," as permitted by the collective bargaining agreement. (Docket Entry No. 2, Ex. A, p. 18). In this suit, Smith asserts that the arbitrator abused his discretion; showed a manifest disregard for the law; was partial, corrupt, and fraudulent; exceeded his powers; and did not use the test for "just cause" termination under the collective bargaining agreement. Lyondell-Citgo moved to dismiss. This court treated the motion as one for summary judgment under FED. R. CIV. P. 12(c) and allowed the parties to supplement the record.

Based on the motions and responses, the parties' submissions, and the applicable law, this court denies Smith's request for reversal of the arbitration award, grants Lyondell-Citgo's motion for summary judgment, and, by separate order, enters final judgment. The reasons are set out below.

## I.     The Applicable Legal Standards

Cases that involve an assertion of rights under an agreement between an employer and a labor organization arise under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a).  *Major League Baseball Players Assoc. v. Garvey*, 532 U.S. 504, 509 (2001); *Int'l Chem. Workers Union, Local 683C of the United Food & Commercial Workers AFL-CIO v. Columbian Chems. Co.*, 331 F.3d 491, 494 (5th Cir. 2003). The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, applies to individual arbitration agreements. *Int'l Chem. Workers Union*, 331 F.3d at 494. "[W]hen reviewing a case involving a [collective bargaining agreement (CBA)] and arising under Section 301, courts are not obligated to rely on the FAA but may rely on it for guidance in reviewing an arbitration award." *Id.* (citations omitted); *see also United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 41 n.9 (1987) ("[F]ederal courts have often looked to the [FAA] for guidance in labor arbitration cases."); *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 352 n.2 ("[C]ourts, in interpreting LRMA cases, have cited to FAA cases and the courts interpreting FAA cases have cited to LMRA cases.").

Review of an arbitration award under "both the LMRA and the FAA remains extraordinarily narrow." *Int'l Chem. Workers Union*, 331 F.3d at 495. Under the FAA:

> [A] district court may vacate an award only if : (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers. An additional ground for vacating an arbitration award is that in making the award the arbitrator acted with "manifest disregard for the law."

*Id.* (quoting *Harris*, 286 F.3d at 792). The party moving to vacate an arbitration award has the burden of proof. *Lummus Global Amazonas S.A. v. Aguaytia Energy Del Peru, S.R. LTDA*, 256 F. Supp. 2d 594, 604 (S.D. Tex. 2002). In reviewing an arbitration award under a collective bargaining agreement, a court must defer to the arbitrator. *Int'l Chem. Workers Union*, 331 F.3d at 494–95. The scope of review is "extremely limited." *Weber Aircraft, Inc. v. General Warehousemen & Helpers Union Local 767*, 253 F.3d 821, 824 (5th Cir. 2001). When a collective bargaining agreement stipulates that both parties will submit a dispute to arbitration, "an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract." *Misco*, 484 U.S. at 37–38. "It is only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispenses his own brand of industrial justice' that his decision may be unenforceable." *Garvey*, 532 U.S. at 509 (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

To determine whether an arbitrator exceeded his powers, a court first examines the language in the collective bargaining agreement. "As long as the arbitrator's decision draws its essence from the collective bargaining agreement and the arbitrator is not fashioning his own brand of industrial justice, the award cannot be set aside." *Weber Aircraft*, 253 F.3d at

824 (internal quotations omitted).  A court must affirm the award "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority."  *Id.* (internal quotations omitted).  This is true even if a court believes the arbitrator "committed serious error."  *Garvey*, 532 U.S. at 509.  "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award."  *Id.* (quoting *Misco*, 484 U.S. at 39).  A court has "no business weighing the merits" of a grievance or "considering whether there is equity in a particular claim."  *Int'l Chem. Workers Union*, 331 F.3d at 496 (quoting *Garvey*, 532 U.S. at 509).  A court must not "look over the shoulder of the Arbitrator in order to alter his credibility decisions" but must "only consider whether the Arbitrator provided a fair and full hearing consistent with the FAA and the LMRA."  *Id.*

**II.    Analysis**

After the hearing in this case, in which both Smith and Lyondell-Citgo appeared and were represented by counsel, the arbitrator issued an eighteen-page opinion, setting out the parties' positions, the evidence, and his findings and conclusions.  The arbitrator found and concluded that Smith had failed to perform his job assignment properly on April 16, 2003.  (Docket Entry No. 2, Ex. A, p. 14).  On that date, Smith was asked if a particular pipeline was closed.  He reported that it was.  Subsequent checking revealed that it was, in fact, open.  The arbitrator found that Smith had not inspected the pipeline to determine whether the valve was closed when he reported to the supervisor.  The arbitrator concluded that Smith was fired

for "good and sufficient cause" for violating the company's Code of Conduct by failing properly to perform his job assignment and by misrepresenting the facts to his supervisor. (*Id.*, pp. 14–15). Another pumper who had done the same thing was suspended without pay. (*Id.*, p. 8). In explaining why the company could properly fire Smith, the arbitrator examined evidence showing Smith's prior problems in his job and found continued unacceptable performance. (*Id.*, pp. 15–16).

Smith argues that the arbitrator exceeded his powers by criticizing Smith's work ethic, rather than focusing on whether Smith was discharged for lying about performing his job duties. (Docket Entry No. 1, p. 2). The authority of an arbitrator is derived from the arbitration agreement. Arbitrators exceed their authority when they decide matters the agreement does not place before them. *See Beaird Indust., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 944 (5th Cir. 2005) (citations omitted). In this case, the parties stipulated as to the issue before the arbitrator: "[w]as the Grievant, Herman Smith, terminated for just cause (good and sufficient cause) pursuant to the provisions of the Articles of Agreement? If not, what is the appropriate remedy?" (Docket Entry No. 2, Ex. A, p. 3). The arbitrator limited his opinion and award to deciding that issue. (*Id.*, pp. 14–16). The arbitrator's award is rationally inferable from the underlying collective bargaining agreement between PACE Local 4-227 and Lyondell-Citgo. The arbitrator did not exceed his authority.

Smith also argues that the arbitrator did not use the contractual test for "just cause" termination. (Docket Entry No. 1, p. 2). This argument does not warrant reversal of the arbitrator's award. The arbitrator analyzed and applied the "just cause" standard to his

review of Smith's discharge. (Docket Entry No. 2, Ex. A, pp. 12–13). The arbitrator began by noting that "[t]he Contract states that management retains the right to discharge or to discipline an Employee for just cause (good and sufficient cause). And the parties have charged the Arbitrator with applying the 'just cause' concept in reviewing the termination of Herman Smith." (*Id.*). The contract defined "just cause" to include the "[f]ailure to perform job assignments or meet job responsibilities." (*Id.*, p. 3). The arbitrator devoted five pages of his opinion to analyzing and applying the "just cause standard." (*Id.*, pp. 13–17). The opinion included the following language:

> What is the "just cause standard" which is applicable to the case at bar?
>
> The Contract states that management retains the right to discharge or to discipline an Employee for just cause (good and sufficient cause). And the parties have charged the Arbitrator with applying the "just cause concept in reviewing the termination of Herman Smith. As I have stated many times in other cases, just cause is not a legal concept but embodies the principles of industrial justice. The purpose of just cause is to protect Employees from unexpected, unforeseen, or unanticipated disciplinary actions while at the same time protecting Management's rights to adopt and to enforce generally accepted employment standards.
>
> For many years I have relied on the following formula in adjudicating just cause cases. Just cause imposes on Management the burden of showing by clear and convincing evidence that (a) the standard being imposed is reasonable and is a generally accepted employment standard that has been properly communicated to the Employee; that (b) the evidence proves that the Employee engaged in the misconduct which violated the standard; and that (c) the discipline assessed is appropriate for the offense under the just cause doctrine after considering any mitigating or extenuating circumstances.
>
> In the instant case (a) was the standard being imposed reasonable and was it a generally accepted employment standard, which was properly communicated to Mr. Smith? I am persuaded that it was. The documentary evidence so proves as well as admissions included in the Grievant['s] own testimony.

(Docket Entry No. 2, Ex. A, pp. 12–13).  Although the arbitrator used the term "industrial justice," he did not "fashion his own brand" but clearly construed and applied the collective bargaining agreement.  The arbitrator relied on the contract to interpret and apply the "just cause" standard to the facts of Smith's job performance and the decision to fire him.  The decision "draws its essence from the collective bargaining agreement." *Weber Aircraft*, 253 F.3d at 824.

An arbitrator's interpretation of the law is reviewed under a "manifest disregard of the law" standard.  *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 381 (5th Cir. 2004); *Kergosien v. Ocean Energy*, 390 F.3d 346, 355 (5th Cir. 2004); *Int'l Chem. Workers Union*, 331 F.3d at 495.  A mere error or misunderstanding of the applicable law is not "manifest disregard." *Brabham*, 376 F.3d at 381;  *Merrill Lynch, Pierce, Fenner & Smith, Inc., et al. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995); *Health Servs. Mgmt Corp. v. Hughes*, 975 F.2d 1253, 1267 (7th Cir. 1992); *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888 F.2d 260, 265 (2d Cir. 1989)).  To vacate an arbitration award on the basis of "manifest disregard," the arbitrator must have "'appreciated the existence of a clearly governing principle but decided to ignore or pay no attention to it.'  Furthermore, 'the governing law ignored by the arbitrators must be well defined, explicit, and clearly applicable.'" *Brabham*, 376 F.3d at 381–82 (quoting *Prestige Ford v. Ford Dealer Computer Servs.*, 324 F.3d 391, 395 (5th Cir. 2003)).  "'The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator.  The term "disregard" implies that the arbitrator appreciates the existence of a clearly governing

principle but decides to ignore or pay not attention to it.'" *Kergosien*, 390 F.3d at 355 (quoting *Prestige Ford*, 324 F.3d at 395). If an arbitrator "'has acted within the ambit of his authority as set out by an arguable construction of the CBA,'" a court has "'no authority to reconsider the merits of the arbitration award, even if the parties argue that the award is based on factual errors or on misinterpretation of the CBA.'" *Int'l Chem. Workers*, 331 F.3d at 495 (quoting *Weber Aircraft*, 253 F.3d at 824). Smith has not met this burden. The arbitrator did not choose to ignore the "just cause" standard the contract set out and did not manifestly disregard the law. (Docket Entry No. 2, Ex. A, pp. 12–17).

Smith also argues that the arbitrator exhibited partiality, corruption, and fraud. Smith offers no analysis or explanation in support of this argument. The party asserting partiality must point to evidence that is "direct, definite, and capable of demonstration rather than remote, uncertain or speculative." *Hughes*, 975 F.2d at 1264. A party may demonstrate "evident partiality" by either showing a failure by the arbitrator to disclose preexisting relationships with the other party or by providing facts that show actual bias in favor of one party during the arbitration. *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 337 F. Supp.2d 862, 881–83 (N.D. Tex. 2004). The record evidences neither facts showing actual bias on the part of the arbitrator nor a special relationship between the arbitrator and Lyondell-Citgo that would indicate bias. Both parties agreed to the arbitrator. Smith testified at the arbitration hearing that he had been fully and fairly represented by his union in the arbitration and that he had nothing else to add to the record. (Docket Entry No. 2, Ex. C, pp. 190–92).

Nor does the record reveal any evidence of corruption, fraud, or undue means on the part of the arbitrator.  "A party who alleges that an arbitration award was procured through fraud or undue means must demonstrate that the improper behavior was (1) not discoverable by due diligence before or during the arbitration hearing, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence."  *In re Arbitration between Trans Chem. Ltd. and China Nat'l Machinery Import & Export Corp.*, 978 F. Supp. 266, 304 (S.D. Tex. 1997) (citations omitted).  Fraud requires a showing of bad faith during the arbitration proceedings, "such as bribery, undisclosed bias of an arbitrator, or willfully destroying or withholding evidence."  *Id.* (citations omitted).  "Undue means" refers to behavior that is "'immoral if not illegal' or otherwise in bad faith."  *Id.* (citations omitted).  In the labor arbitration context, "undue means must be limited to an action by a party that is equivalent in gravity to corruption or fraud, such as a physical threat to an arbitrator or other improper influence."  *American Postal Workers Union v. United States Postal Serv.*, 52 F.3d 359, 362 (D.C. Cir. 1995).

Smith neither offers facts that indicate improper behavior on the part of the arbitrator nor explains how "bad faith" affected the decision.  *See In re Trans Chem. Ltd.*, 978 F. Supp. at 304 (noting that one alleging misconduct by an arbitrator as grounds for vacating an arbitration award must demonstrate a "nexus between the alleged fraud or undue means and the basis for the arbitrators' decision.").  The record reveals no basis to find that the arbitrator engaged in misconduct that would make the award invalid.

### III.     Conclusion

This court finds no basis to vacate the arbitration award. Final judgment will be entered by separate order.

SIGNED on October 31, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge